## NEAL et al. v. AKERS et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1923.)

No. 2049.

1. **Work and labor ☞10—Contract held so ambiguous as not to show meeting of minds; hence auctioneers entitled to reasonable compensation.**

    A contract between auctioneers and realty owners *held* so ambiguous and unintelligible that it did not show a meeting of the minds as to auctioneers' compensation; hence auctioneers were entitled to a reasonable compensation.

2. **Contracts ☞155—Obscurity taken most strongly against party preparing contract.**

    Where there is an obscurity in a contract, the obscurity is to be taken most strongly against the party under whose direction the contract was prepared.

3. **Evidence ☞448—Oral evidence admissible to clear up obscurities in written contract.**

    Where there are obscurities in a written contract, evidence of the circumstances under which it was signed, including previous negotiations and the subsequent conduct of the parties, is admissible to clear up the obscurities.

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd, Judge.

Action by E. C. Akers and another, trading as the Southwest Land Company, against Mrs. Eula J. Neal and others. Judgment for plaintiffs for $7,500, and defendants bring error. Affirmed.

A. E. Holton, of Winston-Salem, N. C. (G. L. Park, of Jefferson, N. C., on the brief), for plaintiffs in error.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. C. Strudwick, of Greensboro, N. C., and T. C. Bowie, of Jefferson, N. C. (W. P. Bynum and S. S. Alderman, both of Greensboro, N. C., on the brief), for defendants in error.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. [1] Plaintiffs and defendants, having agreed that plaintiffs should sell defendants' land at auction, signed an instrument, which was intended to embody the details, including plaintiffs' compensation. The paper, dated July 28, 1919, contained these provisions as to compensation of the agents, which for convenience we number 1, 2, 3, and 4:

(1) "It is further agreed by all parties of this contract that in consideration of the services rendered and expenses incurred by the said party of the first part, in advertisement and conducting said sales, that they, the said party of the first part, shall retain $1,200 of the gross amount arising from the sales of said property if the net amount of sale exceeds $40,000 to this amount, over and above forty thousand dollars."

(2) "Said amount to be retained by the said party of the first out of the cash arising from the sale of said property whether sales are public or private, if total sales exceeds $40,000. * * *"

(3) "It is agreed by all parties to this agreement that all the above farm brings over forty thousand, $1,200, dollars shall go to the parties of the first part, and if the farm fails to bring forty thousand, no sale. Possession in November, 1919."

(4) "If sale is confirmed by parties of the second part and amount of sale does not exceed $40,000, then parties of second part are to pay parties of first part $800, for expenses of sale."

The land brought $55,630, and plaintiffs demanded as compensation under the contract $15,630, the excess over $40,000. The defendants refused to pay the sum demanded, and offered to pay $1,200 as the amount contracted for. All the evidence of the circumstances surrounding the transaction, including the previous negotiations, from which any light on the meaning of the paper could be expected, was admitted. The statements of the witnesses were almost as contradictory and confusing as the paper itself. After hearing all this testimony the District Judge held:

"That the contract referred to in this case is so ambiguous, uncertain, and indefinite in its terms that it is not susceptible of intelligent construction, so as to express the coming together of two minds upon a contract for the sale of land."

After this ruling the plaintiffs, by permission of the court, amended the complaint so as to allege the services rendered by them in selling the land at the request of defendants and their right to reasonable compensation therefor. The defendants' answer to this amended complaint set up the defense that, by written contract, they had agreed to pay the plaintiffs $1,200 as compensation. Thereupon further evidence was taken bearing on the value of the services rendered by plaintiffs. The trial judge adhered to his ruling that there was no agreement as to compensation. The jury found a verdict for $7,500 as the reasonable value of the services of plaintiffs.

[2] We think the solution of the District Judge correct and wise. The blank form of the contract was altered under the direction of the

defendant Mrs. Eula J. Neal, owner of the land, by Spicer, her son-in-law, who was a lawyer. The matter to be expressed was of the simplest character. The confusion was doubtless due in some degree to the use of a blank which was intended for a different sort of contract. The paragraphs 1 and 2 above quoted would seem to mean that, if the land brought $40,000, the agents were to get $1,200. But the natural inquiry arises, if this be so, why did the attorney of the owner write in at the conclusion of the first paragraph quoted the words "to this amount, over and above forty thousand dollars"? But for the ink insertion of "$1,200," paragraph 3 would surely express that the agents were to have as compensation all that the land brought over $40,000. The "$1,200" is inserted in figures so small as hardly to attract attention without careful reading. If it was meant to limit the compensation of the agents to $1,200, then it is entirely inconsistent with every other word in the sentence and with the sentence as a whole. The obscurity is to be taken most strongly against the defendants, under whose direction the paper was prepared. No agreement as to compensation is expressed in the writing.

[3] The court properly allowed evidence of the circumstances under which the paper was signed, including the previous negotiations, and the subsequent conduct of the parties, for the purpose of clearing up the obscurities of the writing. Bradley v. Steam Packet Co., 13 Pet. 89, 10 L. Ed. 72; United States v. Bethlehem Steel Co., 205 U. S. 118, 27 Sup. Ct. 450, 51 L. Ed. 731; Lowrey v. Hawaii, 206 U. S. 206, 221, 27 Sup. Ct. 622, 51 L. Ed. 1026. But all this evidence was unavailing to establish an agreement as to the compensation of the agents; for it led to the probable inference that the defendants intended to contract to allow the plaintiffs $1,200 as compensation for their expenses and services, and that only in case the land brought $40,000, while the plaintiffs intended to contract for all the land brought over $40,000 as their compensation.

It seems evident, therefore, that the trial judge was right in holding that the minds of the parties did not meet in any contract, either oral or written, for the compensation of plaintiffs. But it is equally evident that very valuable services were rendered by plaintiffs, at defendants' request, in bringing about the sale of the land at a price largely in excess of defendants' expectations. Under these circumstances, the only wise and just course was to allow amendment of the complaint setting up the services rendered at the request of defendants, and to submit to the jury the ascertainment of the value of the services.

Even if incompetent evidence was admitted as to the understanding of the plaintiffs that they were to get all the land brought over $40,000, the error was not material, because the alleged contract was thrown out, and the verdict was not based on any agreement as to the amount of compensation.

The witness Colbert had no experience in estimating the value of plaintiffs' services beyond that of the average juryman, and his evidence was properly excluded.

The other points made in the 47 assignments of error do not seem to require discussion.

Affirmed.